July 30, 2026

**Supreme Court**

No. 2023-251-Appeal.
No. 2024-246-Appeal.
(WC 15-518)

Rhode Island Joint Reinsurance : 
    Association

v. :

Brenda Ricci et al. :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2023-251-Appeal.
No. 2024-246-Appeal.
(WC 15-518)

Rhode Island Joint Reinsurance     :
Association

v.     :

Brenda Ricci et al.     :

Present:  Suttell, C.J., Robinson, Lynch Prata, Long, and Indeglia (ret.), JJ.

# O P I N I O N

**Justice Long, for the Court.**  The defendants, Brenda and Ernest Ricci (Mrs. Ricci and Mr. Ricci, respectively) (together, the Riccis or defendants), appeal from a final judgment of the Superior Court entered following a jury verdict in favor of the plaintiff, Rhode Island Joint Reinsurance Association (RIJRA or plaintiff), on count I of RIJRA's complaint for declaratory judgment and on all counts contained in the defendants' counterclaims.  The Riccis also appeal from the denial of their motions for a new trial.[1]  This action arose as a result of a dispute regarding insurance

---

[1] In reviewing the brief initially submitted by RIJRA, it has come to this Court's attention that numerous quotations in that brief are not contained in the cases to which they are attributed.  In fact, some quotations in the brief do not appear in any case that this Court has been able to locate.  Additionally, in one instance, a citation is attributed to a case that does not exist; in another instance, a quotation attributed to the trial justice cannot be found in the trial transcript or the appendix.  While we

- 1 -

coverage for a rental property owned by the Riccis. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court and the trial justice's denial of the motions for a new trial.

## Facts and Procedural History

We glean the following facts from testimony elicited at trial and the record of proceedings in the Superior Court. In February 2014, Mrs. Ricci[2] purchased a property at 876 Ten Rod Road in North Kingstown (the property) for $21,000 at a foreclosure sale. Subsequently, Mrs. Ricci obtained a dwelling and personal liability policy from RIJRA for the property for the period of February 27, 2014, to February 27, 2015. At the time of purchase, an individual named David Christian (Mr. Christian) lived in the property; he had purchased the property via quitclaim deed in 2012. The Riccis opted to allow Mr. Christian and his family to remain in the house and pay them rent; the parties executed a two-year lease on March 1,

---

have addressed this matter with the responsible attorneys, we take this opportunity to reiterate in no uncertain terms that advancements in technology do not absolve attorneys from their obligations to ensure the accuracy and veracity of their filings.
[2] Mr. Ricci bid on the property at the foreclosure sale and assigned his bid to his wife; Mrs. Ricci purchased the property. She was the sole named insured on the insurance policy.

2014.[3] The Riccis also agreed to allow Mr. Christian, who had been in the process of renovating the house, to continue with his renovations.

Mr. Christian paid rent for March but refused to pay the April rent. In the midst of this dispute over rent, Mr. Christian sought an inspection of the property. The inspection occurred on April 29, 2014, after which the building and zoning official for the Town of North Kingstown issued a notice of condemnation to Mr. Christian detailing the code violations. Specifically, the inspector noted electrical, mechanical, and plumbing systems in "a hazardous condition"; a lack of sanitary work surfaces and kitchen floor; missing windows on the second and third floors; openings in the eaves and soffits; and the possibility of exposed lead paint and asbestos.

Mrs. Ricci filed a complaint for eviction for non-payment of rent in District Court on April 23, 2014. Mr. Christian then filed a verified complaint and motions for temporary restraining order and preliminary injunction for protection from unlawful eviction on April 29, 2014. The temporary restraining order was granted that same day and stipulated that Mrs. Ricci must "pay for all lodging and living

---

[3] Only Mrs. Ricci was listed on the lease as the landlord.

expenses." Mrs. Ricci ultimately received a judgment for possession against Mr. Christian on June 11, 2014. Mr. Christian subsequently vacated the premises.

When Mr. Ricci visited the property on June 15, 2014, the house was empty, and he discovered damage he believed had been caused by Mr. Christian and called the police. Mr. Ricci had only visited the house once previously, after his bid had been accepted at the foreclosure sale; at no point had Mrs. Ricci ever set foot on the property. As part of the police investigation, an officer questioned Mr. Christian, who stated that "[e]verything he took out of the home he had a receipt for" and that he was "within his right to leave the home as he did." On June 30, 2014, Mrs. Ricci filed an insurance claim with RIJRA on the property, alleging that the damage had occurred as a result of vandalism.

RIJRA hired Flanagan Claims Service (Flanagan), which inspected the property for the reported damages on July 8, 2014; Flanagan, in a letter to Mrs. Ricci, summarized its conclusions: "Our inspection revealed the damage to the dwelling was the result of unfinished remodeling and we found no evidence of vandalism." The letter also expressly stated that RIJRA "fully reserves unto itself all defenses * * *."

On October 19, 2015, RIJRA filed a single-count declaratory judgment action, seeking a judicial determination about the parties' rights and obligations under the policy. The Riccis answered the complaint and added counterclaims for declaratory

judgment seeking a determination that RIJRA was required under the policy to proceed to an appraisal of the property, among other claims. In February 2017, RIJRA moved to bifurcate, or in the alternative, stay defendants' counterclaims "unless and until they obtain a judgment entitling them to insurance benefits under their policy of insurance with RIJRA." After a hearing on the matter, a justice of the Superior Court granted the motion and stayed the counterclaims. In May 2019, RIJRA moved to amend its complaint with leave of court to add a second and third count alleging that the Riccis had made material misrepresentations and engaged in fraud. The Riccis answered the amended complaint but did not object to RIJRA's motion to amend, and the motion was granted by rule of court.

The Superior Court held a weeklong jury trial in late October and early November 2022. Mrs. Ricci was represented by counsel, and Mr. Ricci represented himself. Before the trial began, the trial justice heard motions *in limine* on October 25, 2022. The relevant motions will be discussed where appropriate.

Trial began on October 26, 2022. The Riccis presented their case first.[4] They called Mrs. Ricci; Gary Tedeschi, the building official and zoning enforcement officer for the Town of North Kingstown; Patrick Dowling, Jr., an attorney who represented them in a number of real estate transactions; Officer Michelle Kinney, a

---

[4] At the hearing on the motions *in limine*, the parties discussed the order of proof during trial. The trial justice ultimately granted the Riccis' motions to be heard first.

patrol officer with the North Kingstown Police Department; William D'Amico II, a public adjustor; Mr. Ricci; and Karen Valente, a senior property examiner with RIJRA. RIJRA opted not to call any witnesses; because Mr. Christian was not available, his deposition was offered by RIJRA and read into the record. During deliberations, the jury sent the trial justice the following question: "With regard to the first question on the verdict form. What is considered to be alleged damage? For example, is the alleged damage that which is contained in Exhibit I, the Performance Adjusting Estimate?" After conferring with the attorneys, the trial justice sent back her answer: "Yes, Exhibit I, the Performance Adjusting Estimate is considered to be alleged damage along with any other evidence that has been put properly before you with respect to the issue of damage that you deem appropriate."

The jury reached a verdict on November 2, 2022, answering "No" to the question, "Do you find that Brenda Ricci and Ernest Ricci have proven by a fair preponderance of the evidence that the alleged damage occurred between February 27, 2014 and June 15, 2014?" Because they answered no, they did not have to reach the other two questions on the form: "Do you find that Brenda Ricci and Ernest Ricci have proven by a fair preponderance of the evidence that the damages alleged were caused by vandalism?" and "Do you find that Rhode Island Joint Reinsurance Association has proven by a fair preponderance of the evidence that Brenda Ricci or Ernest Ricci or both intentionally concealed or misrepresented

- 6 -

any material fact or circumstance; or engaged in fraudulent conduct; or made false statements concerning their insurance claim?" Counsel for Mrs. Ricci asked to poll the jurors, who each confirmed that they agreed with the result on the first question of the verdict form.

The trial justice entered judgment in favor of RIJRA on November 10, 2022. The judgment stated that (1) Mrs. Ricci's insurance policy for the property did not cover claims relating to the alleged vandalism loss; (2) RIJRA had no obligation to reimburse defendants for any claims related to the alleged vandalism loss; and (3) RIJRA is entitled to deny coverage for and disclaim liability for any claim related to the alleged vandalism loss at the property. The trial justice also entered judgment in favor of RIJRA with respect to all counts contained within Mrs. Ricci's counterclaim, as well as Mr. Ricci's counterclaim.

The Riccis separately filed motions for a new trial; the trial justice held a hearing on December 14, 2022. She denied the motions, and the Riccis each appealed both the judgment and the denial of their respective motions for a new trial.

## Issues Presented

On appeal, the Riccis allege a litany of errors.[5] They argue that the trial justice erred by: (1) denying several of their motions *in limine*; (2) declining to admit

---

[5] Mr. Ricci joined Mrs. Ricci's brief in this Court. As such, we refer to the Riccis jointly in addressing their arguments. In the proceedings below, the Riccis filed separate but substantively identical pleadings and motions.

several pieces of evidence that the Riccis attempted to introduce at trial; (3) failing to accommodate their requests related to jury instructions; and (4) denying their motions for a new trial. They also argue that RIJRA breached the implied covenant of good faith and fair dealing. A number of these errors relate to two central issues that came up repeatedly at trial: RIJRA's ability to mount a case on its fraud claim and whether to send the case to appraisal. We will address each assignment of error in turn.

**Motions to Preclude RIJRA from Presenting Evidence of Fraud**

The Riccis argue that the trial justice erred in denying their motions *in limine* to preclude RIJRA from presenting evidence on its fraud claim and admitting evidence of fraud. During the hearing on the motions *in limine*, the Riccis cited *Optical Works and Logistics, LLC v. Sentinel Insurance Company, Limited*, 525 F. Supp. 3d 295 (D.R.I. 2021), for the proposition that an insurer cannot present evidence about arguments it did not make to the insured when it refused to cover a claim, but the trial justice found the facts in this case distinguishable. She also noted that "[t]hese arguments most probably should have been made at that time [i.e., the time RIJRA moved to amend their complaint] in this [c]ourt's opinion." The trial justice continued that, to suggest that RIJRA is "trying to pull a fast one and add a fraud count here is," in her opinion, "completely unfounded." She then denied the motions.

The Riccis now allege that this was error. It appears that the crux of their argument is that RIJRA acted improperly in amending its declaratory judgment action five years after the Riccis first reported the loss and over three years after it filed the initial action. They argue, "[w]hether Ricci had or had not objected to RIJRA's Motion to Amend the [Declaratory Judgment] action, or whether Ricci had or had not raised any affirmative defenses, does not excuse the failure of RIJRA to comply with the mandate of the law and its fiduciary duty * * *." The Riccis cite *Hahn v. Allstate Insurance Company*, 15 A.3d 1026 (R.I. 2011), for the proposition that if an insurer refuses to submit a claim for appraisal, then it must specify with particularity the reason for the denial of coverage. The Riccis also cite *Optical Works* and *Briere v. National Union Fire Insurance Company of Pittsburgh*, 116 F.4th 32 (1st Cir. 2024), for the notion that an insurer should not be permitted to introduce defenses at trial that were not included in its denial letter. The Riccis further argue that the trial justice erred by not permitting Mrs. Ricci to introduce testimony that RIJRA added this fraud claim because it had realized that its original defenses lacked merit.

We review "the grant or denial of a motion *in limine* for an abuse of discretion." *Salvatore v. Palangio*, 247 A.3d 1250, 1258 (R.I. 2021) (quoting *State v. Marte*, 92 A.3d 148, 150 (R.I. 2014)). Here, it is evident that the trial justice did not abuse her discretion in denying the Riccis' motions *in limine* to preclude RIJRA

- 9 -

from presenting evidence of fraud. None of the cases cited by the Riccis provide support for their position. Both *Optical Works* and *Briere* involved defenses raised by insurance companies in breach of insurance contract suits; but here, the fraud claim was one of the counts in RIJRA's declaratory judgment action. *See Optical Works*, 525 F. Supp. 3d at 301; *Briere*, 116 F.4th at 33-34. As the trial justice observed, this case is "different from cases where the insurance company is trying to add testimony at trial, or present testimony at trial with respect to additional theories or reasons for denial of coverage. It's just not the case here." Rather, RIJRA filed the instant action for declaratory relief, and requested a stay of adjudication of defendants' counterclaims, explicitly "for the purpose of determining the parties' respective rights and obligations under a[n] * * * insurance policy issued by [RIJRA] to Brenda Ricci."

Through this claim of error, the Riccis attempt to relitigate (or rather, litigate for the first time) something that should have been argued when RIJRA first moved to amend its complaint to add the counts for fraud. To argue for the first time in the weeks leading up to trial after years of discovery that RIJRA should be estopped from litigating a central part of their amended complaint defies logic. It was well within the trial justice's discretion to allow RIJRA to present evidence related to the claims in its amended complaint, especially after there had not previously been any sort of registered objection. The Riccis also had the opportunity to rebut evidence

- 10 -

of fraud during the trial itself. To suggest that admission of that evidence was so prejudicial as to warrant a new trial is therefore unsupported. The trial justice did not abuse her discretion in denying the Riccis' motions *in limine* to preclude RIJRA from presenting evidence on fraud.

### Denial of Request to Send the Matter to Appraisal

The Riccis also argue that the trial justice erred in declining to order that the matter go to appraisal between RIJRA and the Riccis. During the hearing on the motions *in limine*, the issue arose in the context of the Riccis' motions to allow them "to [i]ntroduce, [p]resent and [a]dmit [e]vidence on [i]ncreased [c]ost to [r]epair [p]roperty [b]ased on [p]resent [c]ost [v]alue and [r]eplacement [c]ost." The trial justice sought confirmation from the parties that if the Riccis prevailed at trial, the case would be submitted for appraisal; counsel for RIJRA agreed, but counsel for Mrs. Ricci disputed that they had reached an agreement. After some discussion, the Riccis agreed to pass the motions without prejudice.[6] Counsel for Mrs. Ricci brought up the issue of appraisal again when trial began and asked whether it would be permissible for him to mention it during his opening statement. The trial justice responded that appraisal was beyond the scope of what should be covered, given that "[t]his is about liability, not damages." She noted, "It's not an issue. * * * [A]s I

---

[6] Although it appears that the trial justice understood this decision to pass the motions as tacit acceptance of the appraisal submission agreement and the scope of the dispute for trial, the Riccis continued to contest this throughout trial.

- 11 -

understand it, the parties have agreed that if the jury finds in your favor, then the defendant or the insurance company has agreed" to submit the matter for appraisal. Appraisal came up again during the direct examination of Mr. Ricci. The trial justice responded, "They agreed to appraisal. We've gone over this. They've agreed." The issue came up again next when RIJRA moved at the close of the Riccis' case for a judgment as a matter of law. Counsel for Mrs. Ricci brought up the appraisal issue in his objection to the motion. The trial justice responded: "You continue to talk about the appraisal process. It's agreed to. In the event that you prevail in the end, the company will go to appraisal."

The Riccis again allege on appeal that the insurance policy contained a provision that afforded "either party the right to have disputes over the amount of loss resolved through an appraisal process." They claim that RIJRA "refused to submit to an appraisal." By filing a complaint for declaratory judgment, the Riccis allege that RIJRA reframed the dispute to be about the "scope of coverage" rather than the "scope of loss," which was improper. Despite the Riccis' numerous attempts to convince the trial justice to order the matter to appraisal, she refused, which they allege is reversible error. We interpret defendants' assignment of error as a question of the admissibility of evidence, namely, whether the trial justice erred in preventing them from presenting evidence related to interest on the cost of repair. To the extent that the Riccis also challenge the trial justice's decision rejecting their

request to send the matter to appraisal, they cite no authority for the proposition that suggests that the trial justice (1) had this authority and (2) neglected to use it as compelled by law.[7]

"The admissibility of evidence is within the sound discretion of the trial justice." *Estrella v. Janney Montgomery Scott LLC*, 296 A.3d 97, 103 (R.I. 2023) (brackets omitted) (quoting *Cappuccilli v. Carcieri*, 174 A.3d 722, 729 (R.I. 2017)). "[T]his Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent." *Berman v. Sitrin*, 101 A.3d 1251, 1259 (R.I. 2014) (brackets omitted) (quoting *Morel v. Napolitano*, 64 A.3d 1176, 1179 (R.I. 2013)). This Court will uphold a trial justice's decision to admit evidence unless the trial justice clearly abused their discretion and the evidence is both prejudicial and irrelevant. *Accetta v. Provencal*, 962 A.2d 56, 60 (R.I. 2009).

By the plain language of the insurance policy issued by RIJRA to Mrs. Ricci, "either [party] may demand an appraisal of the loss" if the parties "fail to agree on the *amount* of loss." After the Riccis requested the opportunity to present evidence on interest, the trial justice evaluated the scope of RIJRA's claims and the Riccis' counterclaims and concluded that appraisal fell outside the scope of issues at the

---

[7] The Riccis reference G.L. 1956 § 27-5-3, but this chapter is about fire insurance. Even so, § 27-5-3 merely includes language for the provisions of a standard fire insurance policy, including for appraisal. Nowhere in this section is there language to suggest that a trial justice has a mandatory (or really, any) role to play in these sorts of disputes.

trial.  Based on the language of the insurance policy and the claims raised by both parties, the trial justice's decision was eminently reasonable.  She repeatedly noted that there would be an opportunity to submit the damages for appraisal if the Riccis prevailed at trial.  Given that appraisal would only become relevant if a jury found that the Riccis' claims were in fact covered under the insurance policy, the trial justice did not abuse her discretion in refusing to allow the Riccis to introduce evidence at trial regarding the amount of their loss.

### Motions to Preclude RIJRA from Introducing Evidence of Fraud in Mr. Christian's Deposition

The Riccis also argue that the trial justice erred in admitting allusions to or discussions of fraud that appeared in Mr. Christian's testimony.  The Riccis first moved to preclude RIJRA from introducing any evidence of fraud in the deposition of Mr. Christian or, in the alternative, from introducing the deposition transcript at all, during the hearing on the motions *in limine*.  They argued that they were not prepared to cross-examine him on the issue of fraud at that deposition because RIJRA had not yet filed its amended complaint to include the fraud claim at that time.  The trial justice queried whether counsel for Mrs. Ricci was at the deposition, to which he answered affirmatively.  The trial justice then denied the motions to exclude the transcript.  The parties revisited the issue during trial once the Riccis rested and RIJRA endeavored to read Mr. Christian's deposition transcript into evidence.  Both sides submitted objections to certain pages or lines, asking those

- 14 -

excerpts not to be read aloud. Many of Mrs. Ricci's objections were withdrawn or overruled. Before the deposition was read into evidence, counsel for Mrs. Ricci renewed the objection to the introduction of any deposition testimony about fraud, which the trial justice denied once again.

The Riccis argue here that "RIJRA first raised fraud allegations * * * almost a year after having taken Christian's deposition." They claim they were "blindsided" because "[f]raud was not a pleaded defense when the deposition occurred." They continue, "RIJRA clearly had fraud in mind * * * [covering] the topic extensively in the deposition, addressing all the information it knew for years but had held back from Ricci. Yet the Ricci's [*sic*] had no prior knowledge RIJRA would elicit such testimony and were unprepared to address these unpleaded allegations." As a result, Mrs. Ricci objected to the introduction of the deposition at trial because "she lacked opportunity to cross-examine Christian on the later-added fraud count." Because her objections during the hearing on the motions *in limine* and during trial were denied, the Riccis conclude that there was prejudicial error.

We consider whether the trial justice's decision to allow the discussion of fraud in Mr. Christian's deposition transcript into evidence was an abuse of discretion. *Estrella*, 296 A.3d at 103. The Riccis do not allege a specific basis for error before this Court, nor is one at all apparent from the record. The admission of this deposition comports with both Rule 804(b)(1) of the Rhode Island Rules of

- 15 -

Evidence (former testimony of an unavailable declarant) and Rule 32(a)(3)(B) of the Superior Court Rules of Civil Procedure (permissibility of deposition testimony at trial for an out-of-state witness). We find it notable that Mrs. Ricci's counsel was at the original deposition and failed to re-depose Mr. Christian after RIJRA filed its amended complaint. To suggest that the Riccis suffered any prejudice is therefore unfounded when they had ample opportunity to cross-examine him about RIJRA's fraud claim both at the deposition and following the amendment of RIJRA's complaint. The trial justice's decision to deny the motions to exclude any mention of fraud in the deposition was therefore reasonable and should not be disturbed.

### Introduction of the Text Messages

The Riccis assign error to the trial justice's rulings not to admit text messages Mr. Christian sent Mr. Ricci, which illustrated the increasing animosity in their relationship. The Riccis first attempted to introduce text messages between Mr. Christian and Mr. Ricci while Mr. Dowling, the attorney, was on the stand. Counsel for RIJRA objected on hearsay grounds, which the trial justice sustained. Counsel for Mrs. Ricci noted his objection to the trial justice's decision to bar the admission of the texts. While Mr. Ricci was on the stand, counsel for Mrs. Ricci once again tried to introduce the text messages by asking him to read them into the record; counsel for RIJRA objected again on hearsay grounds. The trial justice queried whether the messages had been authenticated, to which counsel for Mrs. Ricci

replied that they had been in the eviction proceeding. The trial justice disputed that that authentication was sufficient and noted that the Riccis had not laid the proper foundation for them to come in. She concluded that the messages were hearsay and sustained RIJRA's objection. When counsel for Mrs. Ricci brought up the reply-letter doctrine as a strategy for authentication, the trial justice noted that she would be amenable to this method but noted that they still had "to establish a foundation." She gave counsel for Mrs. Ricci the opportunity to research alternative hearsay exceptions and exemptions under which the Riccis could seek admission of the texts over the weekend recess.

Counsel for Mrs. Ricci broached the issue of introducing the text messages a final time when court resumed after breaking for the weekend. He presented several avenues for admission of the texts, arguing for their introduction under the present sense impression exception to hearsay, as a declaration of state of mind, or a business record. The trial justice rejected the first justification because "[t]hese text messages refer to the past tense, not the present tense" and, as to the latter two, concluded that those exceptions did not apply. She sustained the objection. Ultimately, the only text message conversation admitted at trial was a brief exchange between Mr. Christian and Mr. Ricci about which counsel for RIJRA asked Mr. Ricci during his cross-examination. The Riccis did not object to the questioning of Mr. Ricci about these texts, nor when RIJRA sought to admit this brief conversation in full.

- 17 -

The Riccis contend before this Court that the trial justice's decisions not to admit text messages Mr. Christian sent Mr. Ricci violated Rule 106 of the Rhode Island Rules of Evidence (the rule of completeness) because RIJRA had used excerpts of conversations to impeach Mr. Ricci while he was on the stand and they wanted to use Mr. Christian's responses "to rebut adverse inferences or provide context." The Riccis also argue that they had established authentication and foundation for the text messages, contrary to the trial justice's finding.

The exclusion of the text messages is a question of admissibility of evidence, so we consider whether the trial justice abused her discretion. *See Estrella*, 296 A.3d at 103. The rule of completeness does not apply here. The Riccis sought to introduce hundreds of texts between the two men over a period of months. Rule 106 cannot be stretched in this way, especially when the Riccis do not explain what they are trying to contextualize and why it would require so many texts sent over such a long duration. *See, e.g.*, 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 1.44 at 297 (4th ed. 2013) ("The point of Rule 106, after all, is not to insist on completeness as an end in itself, but to allow others to insist on admitting enough of a statement to put it in appropriate context."). The text messages that were admitted stand on their own; they were used to impeach Mr. Ricci on cross-examination and offer evidence of his state of mind of immense animus toward Mr. Christian. Even if the trial justice had erred, the Riccis would still have had to

surmount the ruling that the messages sent by Mr. Christian were inadmissible hearsay. On appeal, the Riccis do not attempt to contest the trial justice's ruling on hearsay, but it is clear that she did not err in concluding that the text messages were inadmissible. The trial justice therefore did not err when she declined to admit this plethora of text messages, and we affirm her decision to deny the Riccis' attempt to introduce them.

## Introduction of the Eviction Proceeding Transcript

The Riccis also submit that the trial justice erred in refusing to admit the entire transcript of the eviction proceeding when she permitted RIJRA to impeach Mr. Ricci with certain portions of the transcript. Counsel for Mrs. Ricci first broached this issue on the morning of the second day of trial. He anticipated that RIJRA would use the transcript to impeach Mr. Ricci when he took the stand; counsel argued that under Rule 106, the Riccis were entitled to have the rest of the transcript admitted, or at the very least, that counsel for Mrs. Ricci should be permitted to review the transcript in its entirety. The trial justice questioned why counsel had not ordered the transcript in the first place and confirmed with RIJRA that it did not intend to introduce it. The trial justice concluded that Rule 106 does not apply if the document is not going to be introduced (i.e., used only for impeachment purposes). During RIJRA's cross-examination of Mr. Ricci, RIJRA showed him an excerpt from his testimony during the eviction proceeding to refresh his memory but did not introduce

the transcript as an exhibit. Counsel for Mrs. Ricci renewed the objection and noted the exception once again.

Before this Court, the Riccis aver that "it was error to allow RIJRA to use only portions of a transcript from the [eviction] trial to impeach Ernest Ricci, without allowing Ricci to introduce the entire transcript for context or rehabilitation." They seem to renew their Rule 106 argument raised by the failure to allow in the text messages between Mr. Christian and Mr. Ricci.

The exclusion of the full eviction proceeding transcript is another question of admissibility of evidence. *See Estrella*, 296 A.3d at 103. Rule 106 in full reads: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." R.I. R. Evid. 106. As the trial justice noted in denying the Riccis' request, RIJRA had already indicated that they would not be introducing the transcript; she correctly concluded that Rule 106 applies only when a statement is actually introduced and that it was therefore inapplicable. Given that the Riccis could point to no other rule or caselaw to support their argument, we conclude that it was reasonable for the trial justice to deny this request.

**Jury Instructions**

On appeal, the Riccis argue that the trial justice committed two distinct reversible errors related to the jury instructions: (1) by declining to instruct the jury on the definitions of "vandalism" and "fixtures" and (2) by refusing to include an instruction that the loss could have occurred from theft. We will address each assignment of error in turn.

Counsel for Mrs. Ricci noted before the jury entered on the last day of testimony that their proposed jury instructions offered "several definitions of vandalism." After the close of testimony and after both sides rested, the trial justice gave the parties the opportunity to weigh in on her jury instructions. After counsel for RIJRA made his suggested additions and deletions to the instructions, counsel for Mrs. Ricci made his. Specifically, Mrs. Ricci's counsel asked the trial justice to include language that the damage could have occurred as a result of "malicious[] mischief, or theft." The trial justice declined to do so because "the original claim was for vandalism," which is "the way the claim was presented to the insurance company." Mrs. Ricci's counsel noted his objection.

We review jury instructions *de novo*. *Armour v. Bader*, 316 A.3d 1164, 1173 (R.I. 2024). "This Court examines jury instructions in their entirety to ascertain the manner in which a jury of ordinarily intelligent lay people would have understood them." *Mangiarelli v. Town of Johnston*, 289 A.3d 560, 566 (R.I. 2023) (brackets

- 21 -

omitted) (quoting *Riley v. Stone*, 900 A.2d 1087, 1092 (R.I. 2006)). "We do not examine single sentences or selective parts of the charge; rather, the challenged portions must be examined in the context in which they were rendered." *Id.* (quoting *Riley*, 900 A.2d at 1092-93). The "trial justice fulfills his or her obligation to charge the jury properly by framing the issues in such a way that the instructions reasonably set forth all of the propositions of law that relate to material issues of fact which the evidence tends to support." *King v. Huntress, Inc.*, 94 A.3d 467, 482 (R.I. 2014) (quoting *Morinville v. Old Colony Co-operative Newport National Bank*, 522 A.2d 1218, 1222 (R.I. 1987)). "An incorrect charge warrants reversal only if a jury could have been misled to the prejudice of the complaining party." *State v. Ros*, 973 A.2d 1148, 1166 (R.I. 2009) (quoting *State v. Graham*, 941 A.2d 848, 855 (R.I. 2008)).

**Refusal to Instruct on Definitions of "Vandalism" and "Fixtures"**

The Riccis assign error to the trial justice's "refus[al] to instruct the jury on 'vandalism' and 'fixtures.'" However, neither counsel for Mrs. Ricci nor Mr. Ricci ever objected on the record to the trial justice's decision not to include definitions of vandalism and fixtures in the jury instructions. Indeed, there was no mention whatsoever about the definition of fixtures during any of the discussions on jury instructions. As such, this argument is waived. *See* Super. R. Civ. P. 51(b) ("No party may assign as error the giving or the failure to give an instruction unless the

- 22 -

party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection.").

## Refusal to Include Instruction on Theft

The Riccis further allege that the trial justice erred in rejecting their request for a theft instruction, arguing that it is possible that the damage could have occurred as a result of theft during the period between condemnation and Mr. Ricci's June visit.

The jury instructions stated, "The insured, Brenda Ricci, bears the burden of proving by a fair preponderance of the evidence: (1) that the loss occurred within the policy period; and (2) that the loss was a covered loss under the insurance policy." The first question on the verdict form asked the jury whether "Brenda Ricci and Ernest Ricci have proven by a fair preponderance of the evidence that the alleged damage occurred between February 27, 2014 and June 15, 2014[.]" This was the only question the jury answered, as there was no need to go any further given that the failure to prove that the damage happened during the period of coverage defeated the Riccis' case. However, the second question asked whether they proved that "the damages alleged were caused by vandalism[.]"

Although the Riccis properly objected to the trial justice's decision not to include language about theft in the final jury instructions, their argument fails. There is no evidence to suggest that the trial justice's decision not to include a theft

- 23 -

instruction prejudiced the Riccis' rights in the case. *See Ros*, 973 A.2d at 1166. The only question on which the jury deliberated was whether the damage occurred within the policy period, so the cause of the damage—whether theft or otherwise—was not a question ever considered by the jury. There was therefore no opportunity for any alleged error to undermine the Riccis' theory of the case and therefore no basis for reversal.

## Motions for a New Trial

The Riccis argue that the trial justice erred in denying their motions for a new trial. In their motions for a new trial, they argued that the verdict was (1) "contrary to the credible weight of the evidence, and not supported by sufficient evidence"; (2) "contrary to the unbiased and uncontradicted evidence of multiple witnesses"; (3) "contrary to applicable case law"; (4) "contrary to the law, the evidence and the weight thereof"; (5) "ignores and is contrary to all reasonable inferences"; and (6) "fails to respond to the merits of the controversy and fails to administer substantial justice" and that "the charge to the jury was improper * * *."

"We review a trial justice's decision on a motion for a new trial with deference." *Kazarian v. New London County Mutual Insurance Company*, 331 A.3d 984, 990-91 (R.I. 2025). We "will affirm a trial justice's decision on a motion for a new trial as long as the trial justice conducts the appropriate analysis, does not overlook or misconceive material evidence, and is not otherwise clearly wrong."

*Zarembka v. Whelan*, 176 A.3d 485, 487-88 (R.I. 2018) (quoting *Bitgood v. Greene*, 108 A.3d 1023, 1028 (R.I. 2015)). "In considering a motion for a new trial, the trial justice sits as a super juror and is required to make an independent appraisal of the evidence in light of his or her charge to the jury." *Dextraze v. Bernard*, 253 A.3d 411, 416 (R.I. 2021) (quoting *Letizio v. Ritacco*, 204 A.3d 597, 602 (R.I. 2019)). "If, after conducting this analysis, the trial justice concludes that the evidence is evenly balanced or that reasonable minds could differ on the verdict, she or he should not disturb the jury's decision." *Id.* (quoting *Letizio*, 204 A.3d at 602).

During the hearing on the motions for a new trial, after hearing the parties' arguments, the trial justice began her decision by reciting the correct legal standard and the process of her review. She recited the procedural history and summarized the Riccis' arguments.

The trial justice evaluated each of the Riccis' assignments of error in turn. She first considered the relevant evidence and testimony presented at trial. After discussing the witnesses' testimony, she observed: "An exhaustive review of the record evidence points to one conclusion. With respect to Mr. Ricci's testimony, there's not enough ink in the pen to document his inconsistent statements and false statements contained in his testimony." She determined that the jury's verdict was supported by the weight of the evidence, concluding, "[a]fter independently assessing the credibility of the witnesses and affording the testimony the appropriate

- 25 -

weight, this Court concludes that the verdict is correct." She then mentioned the Riccis' contention regarding the jury instructions and charge but noted that they did not object to either the verdict form or the jury charge, so their arguments on both were waived. She next addressed the contention that she erred in denying the Riccis' motions to preclude RIJRA from submitting evidence on fraud. She maintained that the cases cited by the Riccis were inapposite and perceived no error in her denial of their motions. She similarly concluded that allowing the deposition of Mr. Christian into evidence and her refusal to admit the glut of messages between Mr. Christian and Mr. Ricci were proper. She then denied the Riccis' motions for a new trial.

We note that defendants failed to properly transmit the hearing on the motions for a new trial transcript to this Court. Article I, Rule 11(a) of the Supreme Court Rules of Appellate Procedure requires that "[p]romptly after filing the notice of appeal the appellant shall comply with the provisions of Rule 10(b) and shall take any other action necessary to enable the clerk to assemble and transmit the record." Although the Riccis attempted to order the transcript from the hearing on their motions for a new trial, it was never received by this Court. As we have noted, "[t]he appellant, not the clerk, is responsible for the timely transmission of the record and the transcript under our rules." *Small Business Loan Fund Corporation v. Gallant*, 795 A.2d 531, 533 (R.I. 2002). Normally, this Court would not rule on an issue before us without a transcript, but in this case, RIJRA included the full transcript as

an appendix to its brief in this Court, so we will undertake its review.  On the merits, however, the Riccis' argument fails.

Our review of the trial justice's decision reveals that she properly performed her function.  She applied the appropriate standard, conducted the correct analysis, and accurately evaluated both the facts and the law.  As such, we affirm the trial justice's decision denying the Riccis' motions for a new trial.

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

Finally, the Riccis argue that "the acts and omissions of RIJRA constitute a breach of the implied covenant of good faith and fair dealing inherent in the insurance contract between the parties, such that a new trial is warranted."  However, the Riccis do not cite to any specific action of the trial justice or a defect in the trial process related to the implied covenant of good faith and fair dealing.  Article I, Rule 16(a)(2) of the Supreme Court Rules of Appellate Procedure requires an appellant to provide in their brief "[a] specification of the errors claimed with a page citation to the places in the record and the appendix where such error can be found[.]"  The Riccis offer no such citation.  This issue, to the extent that one even exists, is therefore waived. *See Horton v. Portsmouth Police Department*, 22 A.3d 1115, 1130 (R.I. 2011) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue."

(quoting *Kaveny v. Town of Cumberland Zoning Board of Review*, 875 A.2d 1, 10 (R.I. 2005))).

## Conclusion

For the foregoing reasons, we affirm the trial justice's decision on the defendants' motions for a new trial and reject all of their specific claims of error. We therefore affirm the judgment in favor of the plaintiff and remand the papers to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Rhode Island Joint Reinsurance Association v. Brenda Ricci et al. |
| **Case Number** | No. 2023-251-Appeal. <br> No. 2024-246-Appeal. <br> (WC 15-518) |
| **Date Opinion Filed** | July 30, 2026 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, Long, and Indeglia (ret.), JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Gail M. Ryan, Esq. |
| | For Defendants: <br><br> Richard A. Pacia, Esq. |